Nathan S. Dorius (8977)
Brennan H. Moss (10267)
PIA ANDERSON DORIUS REYNARD & MOSS
222 South Main Street
Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 350-9000
Facsimile: (801) 350-9010
Email: nathan@padrm.com
       bmoss@padrm.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| JOHNSEN AND ALLPHIN PROPERTIES, LLC, a Utah limited liability company, | |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| vs. | Civil No. 2:12-CV-00740-TS |
| FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation | Judge Ted Stewart |
| Defendant. | |

\* \* \* \* \* \* \*

Plaintiff Johnsen and Allphin Properties, LLC ("JAP" or "Plaintiff"), hereby complains against First American Title Insurance Company ("FATCO" or "Defendant"), and for causes of action alleges as follows:

## NATURE OF ACTION

This is a diversity action seeking damages against Defendant in connection with the breach of a contract for title insurance.

## DESCRIPTION OF THE PARTIES

1. JAP is a Utah limited liability company with its principal offices in the State of Utah, and is therefore a citizen of the State of Utah.

2. Upon information and belief, FATCO is a California corporation with its principal offices in the State of California, and is therefore a citizen of the State of California.

## JURISDICTION AND VENUE

3. Plaintiff conducts its business in Utah and entered into the underlying transaction(s) at issue in this litigation in the State of Utah.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is among citizens of different states.

5. This Court has personal jurisdiction over the Defendant inasmuch as it regularly conducts business in the State of Utah, maintains offices throughout the State of Utah, and is registered to do business with the State of Utah.

6.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

7.	The real property at issue is located in Summit County, Utah and is commonly known as 8129 and 8143 Courtyard Loop 11, Park City, UT 84098 and legally described on "**Exhibit A**," attached hereto and made a part hereof, together with the improvements thereon ("**Property**").

8.	The Property is a condominium development in Park City, Utah, known as The Courtyards at Quarry Village.  The project is divided into four phases.  Phase 1 is comprised of Units 37-48; Phase 2 is comprised of Units 25-36; Phase 3 is comprised of Units 13-24; Phase 4 is comprised of Units 1-12 and 49-52.  The construction of Phases 1 and 2 is complete, but Phases 3 and 4 have not been constructed, and the lots in Phases 3 and 4 are currently in the form of building pads. (The recorded schedule of units is attached hereto as "**Exhibit B**" and incorporated herein by reference.)

9.	Plaintiff was previously the title owner of Units 25-33 of Phase 1, and Units 39-40 and 46-47 of Phase 2 but has since sold those units to third parties.

10.	Plaintiff is currently the title owner of Units 1-12 and 49-52 of Phase 4, Units 13-24 of Phase 3, (collectively, "**Plaintiff's Property**") after being deeded the property by the borrower pursuant to a Deed in Lieu Agreement.

11.	Plaintiffs Property is the subject matter of this litigation.

12. As evidenced by that certain Promissory Note dated September 19, 2006 (the "**Promissory Note**"), Barnes Banking Company ("**Barnes Bank**") agreed to provide borrowers QVA, Inc., R. Scott Webber, and James H. Shotwell ("**Borrowers**") with a line of credit in the maximum amount of $5,040,000.00. (The Promissory Note and related loan documents are attached hereto as "**Exhibit C**" and incorporated herein by reference.)

13. The Promissory Note is secured by that certain Construction Deed of Trust dated September 19, 2006 ("**Deed of Trust**") executed by QVA, Inc. in the original principal amount of Five Million Forty Thousand and 00/100 Dollars ($5,040,000.00) in favor of Barnes Banking Company, as trustee and beneficiary, and which was recorded on September 21, 2006 in the Summit County Recorder's Office as Entry Number 00791566, in Book 1818, Page 707. (The Deed of Trust is attached hereto as "**Exhibit D**" and incorporated herein by reference.)

14. Barnes Bank (and its successors and assigns) obtained a lender's policy of title insurance from FATCO (Policy No. 31959-60-A, referred to herein as the "**Policy**"), insuring the first priority lien position of the Deed of Trust on the Property. (A copy of the Policy is attached hereto as "**Exhibit E**" and incorporated herein by reference.)

15. The Policy indicated that there were no deeds of trust recorded against the Property prior to the Deed of Trust.

16. Effective November 30, 2010, the FDIC, as receiver for Barnes Bank, assigned its interest in the Promissory Note to 2010-3 SFR VENTURE, LLC, a Delaware limited liability company ("**SFR**"), as evidenced by an Allonge of even date therewith.

17. Effective November 30, 2010, the FDIC, as receiver for Barnes Bank, executed an Assignment of Real Estate Deed of Trust in favor of SFR, assigning all of Barnes Bank's right, title and interest in and to the Deed of Trust to SFR. The assignment instrument was recorded February 10, 2011 in the office of the Summit County Recorder as Entry Number 00916828 in Book 2069 at Page 0796 of the official records.

18. On November 21, 2011, SFR assigned its interest in the Promissory Note to Lutetium Holding Company, LLC ("**Lutetium**"), as evidenced by an Allonge of even date therewith.

19. On November 21, 2011, SFR executed an Assignment of Real Estate Deed of Trust in favor of Lutetium, assigning all of its right, title and interest in and to the Deed of Trust to Lutetium. The assignment instrument was recorded February 22, 2012 in the office of the Summit County Recorder as Entry Number 939891 in Book 2116 at Page 1068 of the official records.

20. On February 17, 2012 Lutetium assigned its interest in the Promissory Note to Plaintiff, as evidenced by an Allonge of even date therewith.

21. The current balance owing under the Promissory Note is approximately $2,598,532.00.

22. On February 17, 2012, Lutetium executed an Assignment of Construction Deed of Trust in favor of Plaintiff, assigning all of its right, title and interest in and to the Deed of Trust to Plaintiff. The assignment instrument was recorded February 22, 2012 in the office of the

Summit County Recorder as Entry Number 00939896 in Book 2116 at Page 1100 of the official records.

23. In addition to the above-referenced note and deed of trust, Barnes Bank issued three additional loans and caused to be recorded three additional trust deeds as security for the loans (for purposes of this Complaint, only two of the additional loans are relevant). The first trust deed was executed on June 23, 2006, by Quarry Village Associates, LLC as the Trustor, in favor of Barnes Bank as the Beneficiary, and was recorded on June 29, 2006 in the Summit County Recorder's Office as Entry No. 00782535 ("**June 2006 Trust Deed**"). The June 2006 Trust Deed was given as security for a loan in the principal amount of $5,500,000.00. (The June 2006 Trust Deed is attached hereto as "**Exhibit F**" and incorporated herein by this reference.)

24. The second trust deed was executed on July 12, 2006 by Quarry Village Associates, LLC as the Trustor, in favor of Barnes Bank as the Beneficiary, and was recorded on July 13, 2006 in the Summit County Recorder's Office as Entry No. 00783773 ("**July 2006 Trust Deed**")(the June 2006 Trust Deed and July 2006 Trust Deed are collectively hereinafter referred to the "**CVB Trust Deeds**"). The July 2006 Trust Deed was given as security for a loan in the principal amount of $378,000. (The July 2006 Trust Deed is attached hereto as "**Exhibit G**" and incorporated herein by this reference.)

25. Upon information and belief, through a series of assignments, the CVB Trust Deeds, along with the aforementioned loans secured thereby, have been assigned to Cache

Valley Bank, a Utah banking corporation ("**CVB**"), and CVB now holds the beneficial interests under the CVB Trust Deeds.

26. Borrowers defaulted under the Promissory Note and Plaintiff initiated non-judicial foreclosure proceedings against Plaintiff's Property.

27. Borrowers and Plaintiff entered into a Deed in Lieu of Foreclosure Agreement.

28. On March 14, 2012, Borrower QVA, Inc. executed a Deed in Lieu of Foreclosure in conjunction with its execution of the Deed in Lieu of Foreclosure Agreement.

29. Pursuant to the terms of the Deed in Lieu of Foreclosure Agreement, on or about June 28, 2012 QVA delivered to Plaintiff a Deed in Lieu of Foreclosure, which Plaintiff caused to be recorded on June 28, 2012 at the Summit County Recorder's Office, as Entry No. 00947989, in Book 2134 at Page 1080 (the "**DIL**").

30. Plaintiff now holds fee simple title ownership of Plaintiff's Property.

31. On October 11 2011, CVB initiated non-judicial foreclosure proceedings against Plaintiff's Property.

32. CVB caused a trustee's sale to be scheduled for May 22, 2012.

33. Counsel for Plaintiff notified CVB of certain technical deficiencies with CVB's foreclosure proceedings, and CVB cancelled its Notice of Default.

34. On May 22, 2012, CVB caused a new Notice of Default to be recorded at the Summit County Recorder's Office under Entry No. 00945745, in Book 2129 at Page 0320 to reinstitute the non-judicial foreclosure proceedings against Plaintiff's Property.

35. CVB asserts a prior and superior lien position to that held by Plaintiff under Plaintiff's Trust Deeds.

36. Plaintiff acquired ownership of the Plaintiff's Property with the objective to sell Plaintiff's Property to one or more third parties for a profit.

37. To date, Plaintiff has received no less than three written Real Estate Purchase Contracts from interested parties.

38. Each of the three offers to purchase Plaintiff's Property was in excess of two million dollars.

39. Plaintiff has been obliged to allow each of the purchase offers to lapse, despite its desire to accept the same and sell Plaintiff's Property, due to the cloud on title by virtue of CVB's Trust Deeds and CVB's pending foreclosure proceedings.

40. On or about February 2012, Plaintiff first learned of the CVB Trust Deeds.

41. On February 29, 2012, Plaintiff submitted a claim (the "**Claim**") against the Policy to FATCO. (A copy of the Claim (less the exhibits/attachments originally enclosed therewith) is attached hereto as "**Exhibit H**" and incorporated herein by reference.)

42. FATCO acknowledged receipt of the Claim the day after it was submitted. A copy of the acknowledgement is attached hereto as "**Exhibit I**" and incorporated herein by reference.

43. Between March 1, 2012 and July 20, 2012, Plaintiff was in regular communication with representatives at FATCO in an effort to get FATCO to accept and settle the Claim.

44. However, FATCO has transferred the Claim from one representative to another, has requested copies of documents from Plaintiff (which were equally accessible by FATCO or should have been in the possession of its title insurance agency), and has failed or refused to accept the Claim and make payment thereon or otherwise resolve the Claim pursuant to its obligations under the Policy.

45. Plaintiff notified FATCO of CVB's foreclosure and scheduled trustee's sale, and FATCO took no action to stop said sale.

46. Plaintiff's counsel took the necessary steps to cause the cancellation of CVB's foreclosure.

47. Plaintiff then notified FATCO when CVB filed its new Notice of Default against Plaintiff's Property, but FATCO has done nothing to prevent CVB from proceeding to a trustee's sale of Plaintiff's Property.

48. As a result of CVB's Trust Deeds clouding title to Plaintiff's Property and FATCO's refusal or failure to perform its obligations under the Policy, Plaintiff has been damaged and continues to incur damages in an amount to be proven at trial.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract)

49. Plaintiff realleges and incorporates the allegations set forth above as though fully set forth herein.

50. The Policy constitutes a valid and enforceable contract whereby FATCO insured its named insured in said Policy against any loss or damage sustained by the said insured by reason of any lien or encumbrance on the title to the Property.

51. The insured mortgage under the Policy is the Deed of Trust.

52. The original insured under the Policy was Barnes Banking Company, its successors and/or assigns.

53. By virtue of the several recorded assignments of the Deed of Trust, Plaintiff is the successor and/or assignee of the original insured under the Policy.

54. Therefore, Plaintiff is now the insured under the Policy.

55. Plaintiff, as successor and/or assign to Barnes Bank, has fully performed its obligations under the Policy.

56. FATCO, on the other hand, has materially breached the Policy by, among other things, failing to insure the first lien position of the Deed of Trust and to compensate Plaintiff for its loss and/or damages in accordance with the Policy.

57. Pursuant to the Policy, FATCO has an affirmative obligation to resolve the Claim without unreasonable delay.

58. FATCO has neither accepted nor resolved the Claim within a reasonable amount of time under the circumstances, further breaching the terms of the Policy.

59. As a direct and proximate result of FATCO's material breach of the Policy as described above, Plaintiff has incurred, and continues to incur, significant damages.

60. Plaintiff is therefore entitled to judgment against FATCO as set forth below in paragraph A of the Prayer for Relief.

## SECOND CLAIM FOR RELIEF
(Bad Faith)

61. Plaintiff realleges and incorporates the allegations set forth above as though fully set forth herein.

62. As alleged herein above, FATCO was notified of the Claim on February 29, 2012 and, to date, has neither accepted the Claim, resolved it, nor compensated Plaintiff for its loss and/or damages.

63. By refusing, after nearly six months, to accept the Claim and take action to protect Plaintiff's interests pursuant to the Policy, FATCO has acted in bad faith.

64. FATCO's unreasonable delay and refusal to accept the Claim submitted nearly six months ago constitutes a bad faith denial of the Claim.

65. With full knowledge of CVB's pending foreclosure proceedings and the impact such will have upon Plaintiff's interests, FATCO has refused to take the steps necessary to protect Plaintiff's interests or compensate it for its loss and/or damages in a timely manner, and it has done so in bad faith.

66. As a direct and proximate result of FATCO's bad faith actions as described above, Plaintiff has incurred, and continues to incur, significant damages.

67. Plaintiff is therefore entitled to judgment against FATCO as set forth below in paragraph B of the Prayer for Relief.

### THIRD CLAIM FOR RELIEF
(Breach of Good Faith and Fair Dealing)

68. Plaintiff realleges and incorporates the allegations set forth above as though fully set forth herein.

69. The Policy constitutes a valid and enforceable contract between FATCO and Plaintiff.

70. An implied covenant of good faith and fair dealing exists in the Policy.

71. FATCO breached the implied covenant of good faith and fair dealing when it failed, in a timely manner, to diligently investigate the facts forming the basis of the Claim to determine whether the Claim is valid.

72. FATCO breached the implied covenant of good faith and fair dealing when it failed, in a timely manner, to fairly evaluate the Claim.

73. FATCO breached the implied covenant of good faith and fair dealing when it failed, in a timely manner, to reject or settle the Claim.

74. FATCO breached the implied covenant of good faith and fair dealing when, with full knowledge of CVB's pending foreclosure proceedings and the risk of Plaintiff's interests in Plaintiff's Property being extinguished thereby, it failed or refused to appear and defend Plaintiff's interests or otherwise take timely action to fulfill its contractual obligations under the Policy.

75. As a direct and proximate result of FATCO's breach of the implied covenant of good faith and fair dealing as described above, Plaintiff has incurred, and continues to incur, significant damages.

76. Plaintiff is therefore entitled to judgment against FATCO as set forth below in paragraph C of the Prayer for Relief.

### FOURTH CLAIM FOR RELIEF
(Negligent Interference with Prospective Economic Advantage)

77. Plaintiff realleges and incorporates the allegations set forth above as though fully set forth herein.

78. Since filing its Claim, Plaintiff has received no less than three written purchase offers to purchase Plaintiff's Property for an amount in excess of two million dollars.

79. FATCO knew or should have known that Plaintiff was attempting to sell Plaintiff's Property and would be soliciting and receiving purchase offers.

80. FATCO knew or should have known that FATCO's failure to settle the Claim in a timely manner would impede Plaintiff's ability to accept any of the written purchase offers, because Plaintiff would be unable to provide clear title to the prospective purchaser(s).

81. FATCO failed to act with reasonable care.

82. FATCO engaged in wrongful conduct when it breached its contract and the implied covenant of good faith and fair dealing with Plaintiff.

83. Plaintiff was, in fact, unable to accept any of the written purchase offers on the sole basis that it would not be able to provide clear title to the prospective purchaser(s).

84. Therefore, Plaintiff was obliged to allow each of the offers to lapse and terminate.

85. As a result of having to allow the offers to lapse and terminate, Plaintiff suffered harm.

86. FATCO's wrongful conduct was a substantial factor in causing Plaintiff's harm.

87. As a direct and proximate result of FATCO's negligent interference with prospective economic advantage as described above, Plaintiff has incurred, and continues to incur, significant damages.

88. Plaintiff is therefore entitled to judgment against FATCO as set forth below in paragraph D of the Prayer for Relief.

### FIFTH CLAIM FOR RELIEF
(Negligent Misrepresentation)

89. Plaintiff realleges and incorporates the allegations set forth above as though fully set forth herein.

90. The Policy contains statements and representations concerning the condition of title to the Property and the lien position of the Deed of Trust.

91. As described herein above, the Policy was issued to and for the benefit of Barnes Bank and its successors and assigns; and Plaintiff is the successor and/or assign of Barnes Bank under the Policy by virtue of the several recorded assignments of the Deed of Trust.

92. Therefore, the statements and representations contained within the Policy were made, in effect, for the benefit of Plaintiff.

93. Equity Title Company ("**Equity**"), which was at all times relevant hereto the agent of FATCO, represented in the Policy that there were no prior deeds of trust recorded against the Property.

94. Equity, as the agent of FATCO, is in the business of searching title, determining the existence of previously recorded deeds of trust, and identifying any liens which would be prior and superior to the insured mortgage under any given title policy.

95. Equity represented in the Policy that the Deed of Trust would be in first lien position on title to the Property (the representations described in paragraphs 93 and 95 herein shall be referred to hereinafter as the "**Representations**").

96. The Representations were material to Barnes Bank's decision to make the loan evidenced by the Promissory Note (herein the "**Loan**").

97. The Representations were material to Plaintiff's decision to purchase the Loan, proceed with the foreclosure against the Property, and, ultimately, to take title to Plaintiff's Property.

98. At the time Equity made the Representations, the Representations were false.

99. Therefore, Equity knew or should have known that the Representations were false at the time they were made and transmitted to the insured under the Policy.

100. At the time Equity made the Representations and transmitted them to Barnes Bank, Equity knew or should have known that Barnes Bank (and its successors and assigns) would rely upon the Representations.

101. Equity made the Representations recklessly and with total disregard for the consequences to Barnes Bank, its successors and assigns, who were and would be relying upon the Representations.

102. At the time it made the Representations, Equity was in a superior position to determine the existence of the CVB Deeds of Trust recorded against the Property and reflect the same on the Policy.

103. Equity made the Representations to induce Barnes Bank to close on the Loan utilizing Equity's title and/or escrow services.

104. Barnes Bank and Plaintiff relied upon the Representations.

105. Reliance by Barnes Bank and Plaintiff on the Representations was reasonable, and Barnes Bank and Plaintiff were ignorant of the falsity of the Representations at the time they relied upon the Representations.

106. In reliance upon the Representations, Barnes Bank closed on the Loan.

107. In reliance upon the Representations, Plaintiff purchased the Loan, proceeded with the foreclosure under the Deed of Trust, and took title to Plaintiff's Property pursuant to the previously described deed-in-lieu.

108. As a direct and proximate result of Plaintiff's reliance upon the Representations, Plaintiff has incurred, and continues to incur, significant damages.

109. Plaintiff is therefore entitled to judgment against FATCO for the negligent misrepresentations of its agent, Equity, as set forth below in paragraph E of the Prayer for Relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. On its First Claim for Relief against Defendant for an amount to be proved at trial but no less than $2,500,000.00.

B. On its Second Claim for Relief against Defendant for an amount to be proved a trial but in no event less than $2,500,000.00, plus punitive damages.

C. On its Third Claim for Relief against Defendant for an amount to be proved at trial but in no event less than $2,500,000.00, plus punitive damages.

D. On its Fourth Claim for Relief against Defendant for an amount to be proved at trial but in no event less than $2,500,00.00, plus punitive damages.

E. On its Fifth Claim for Relief against Defendant for an amount to be proved at trial but in no event less than $2,500,000.00, plus punitive damages.

F. Plaintiff's reasonable attorney's fees and costs of court herein.

G. For such other and further relief as the court deems just and equitable under the circumstances.

DATED this 31st day of July, 2012.

PIA ANDERSON DORIUS REYNARD & MOSS

_____s/ Brennan H. Moss_____
Nathan S. Dorius
Brennan H. Moss
Attorneys for Plaintiff

**Plaintiff's Address:**
10577 S. Redwood Road
South Jordan, UT 84095